Good morning. May it please the Court. Kara Hartzler for Petitioner. Jose Corrales-Navarro. I'd just like to begin by addressing, I think, your concern, Judge Seabright, and this is over the question of the fact that the official federal statute doesn't necessarily require judicial proceedings in some of the languages, some of the provisions. And what I want to talk to you about in terms of that is, actually, the government counsel and I appear to agree on that point, is that the aggravated felony statute did not specifically reference that, those federal statutes. They're not explicitly tied to it. And as Espinoza-Gonzalez says, the federal statutes don't necessarily define it, but they inform it. They provide substantial guidance. And what has come out as the generic definition of obstruction of justice through three decades of case law, through the BIA's own decision in Espinoza-Gonzalez, the sentencing guidelines, through the statute itself, is that we have to have this link to some sort of judicial proceedings. Now, I think the Court is exactly right to be concerned about the potential overbreadth of the way that the BIA is interpreting the obstruction of justice statute, because it's very dangerous. If we're looking at situations, for instance, under Arizona law, a person could be convicted for, for instance, not stopping when a police officer tells them to pull over. That would be obstruction of justice. If there was a specific intent that I don't want to pull over right now, a person could be or have obstruction of justice for resisting arrest, for a false statement to an officer, for aggravated assault on a police officer, for refraining from reporting a felony for a pecuniary benefit. This is extremely broad, and that's why we're saying that it doesn't deserve deference. What does deserve deference is Espinoza-Gonzalez's definition, which this Court has already deferred to. Now, I'd like to also point out that opposing counsel has talked a lot about the realistic probability. And, well, no, this would never actually be applied to anything that you need to be concerned about. In that sense, I would actually like to point to my client's own case. Let me stop you for one minute and ask you a question based on what you just said. What if we disagree with both of you? What if we disagree that a proceeding has to be pending, that that ruling, certainly the BIA under Brand X had an ability to say the Ninth Circuit's view on that we disagree with, but we think that the definition given may be a little too broad? Where does that leave us? Well, I think that the Court does have the ability to come up with its own definition if it believes that the BIA definition isn't correct. I think that the Court has done that in other cases. For instance, deference is not necessarily a rubber stamp, and the Court can come up with its own definition. Or remand. I'm sorry? Or remand. Or remand. However, I'm not particularly confident in the BIA's decision, shall we say, to back off from this overly broad approach to this case. I'm just not sure what definition we can come up with. I mean, and I look at the CIMT area. The Supreme Court has said it's not unconstitutionally vague. That's correct. Back in 1951. That's correct. This Court as recently as a year or two ago said the same. That seems a lot vaguer to me. I agree. Than the term destruction of justice. I agree. Because the term crime involving moral turpitude is very unique to the immigration context, and it's sort of the quintessential ambiguous statute. Obstruction of justice, by contrast, is something that's been interpreted in many contexts, in Federal law, by the sentencing guidelines, by the Supreme Court. But if the BIA gives a fair definition here, I guess, under Chevron deference, they give a fair definition in a statute that isn't amenable to easy definition. And if the Supreme Court has held that CIMT is not vague, unconstitutionally vague, why don't we just accept what the Board did then? What the Board did in Valenzuela, Gallardo? Yes. Yes. Well, our position would be that actually the en banc decision in Espinoza-Gonzalez is the definition that deserves deference. That Valenzuela is just such a radical offshoot of that. And even though the government is saying, well, it just clarifies it, really it doesn't. Espinoza-Gonzalez says in no fewer than five places that this Act has to be tied to a judicial proceeding or investigation. Is that a separate problem? That if you really think this is not a clarification, that this is really a sea change? I guess I don't hear you saying that the BIA can't change its mind. But is it a separate problem that the decision we're talking about is a three-judge decision and not an en banc decision? I was not able, Your Honor, frankly, to necessarily find something sane, particularly on that point. I think what it goes to is Espinoza-Gonzalez, as an en banc BIA decision, deserves a lot more weight than Valenzuela-Gallardo was. So you're not taking the position that they can't change their mind? I'm not taking the position they can't change their mind. And under Brand X, we give them deference? Under Brand X, we give them deference to the extent that it's a reasonable interpretation. Right. And so your argument is that it's not a reasonable interpretation. Correct. Right. You keep saying it's overbroad. It's very broad. We're certainly concerned about it being broad. I think that's a fair assessment. That's what we've been talking about all morning. But why is it unreasonably broad? Why is it unreasonably broad? Are you arguing it's unconstitutionally broad? Well, we do have our constitutional argument, as the Court knows from our briefing. And I think going to the realistic probability, for instance, my client's situation was one where he was essentially convicted because he told police to go get a warrant. Maybe he was convicted because he told the police that the guy wasn't in the house. Maybe he was convicted because he lied to the police. But I take your point. He's going to take the example that he was exercising a right to insist upon a search warrant. I can go with that hypothetical. I'm sorry. Could you restate your question? I didn't have a question. Oh, okay. My point is just that you did say that you assume that your client was convicted for insisting upon a search warrant. That's what you want me to assume? Sure. But let's assume he wasn't. Let's assume that he was convicted because he lied. Right. All right. That still doesn't have any sort of relationship to a judicial proceeding. And in fact, I want to point out another thing. Why not? Why not? Why not? Well, first of all, the person that he was apparently helping was never actually arrested or prosecuted for a felony. So I think that's another point that really speaks to the overbreadth of this statute, that in my case, the person never had any judicial proceedings at all. So I think that's a huge concern. But, for instance, even if my client was just making a false statement to the police, that's covered under another ground. That's covered under, for instance, crime involving moral turpitude. The BIA has held that a false statement is crime involving moral turpitude. What we're concerned about here and why we believe that ultimately this is not reasonable is that obstruction of justice as an aggravated felony, the most harsh characterization under immigration law, is being defined to include things that I think the court has discussed this morning. If you want to say it maybe falls under a CIMT or another ground, that's something else. But we need to be very, very careful about, for instance, in my case, kicking a person out of the United States when he's been here for the age, since the age of two months. It's unreasonable for those reasons. If the Court would permit me, I'll reserve the remainder of my time. Kagan. Kagan. Counsel, could you address the question that I have about whether there's a separate problem because this was a three-judge opinion and there's an earlier en banc? Is your position that there's no problem because this was just a clarification? You got it, Your Honor. So what if I disagree with you? What if I think this really was a C change? Well, the problem that you – I mean, this is actually what the Hoang dissent pointed out is that how could you have simultaneously found that Espinoza did not overrule Batista? And that's what the Court recognized is that it did not overrule Batista but clarified now that this is what the Court said at least, that now the Board has said that it only interfered – only interference with a pending proceeding. And that the Court sort of found that Espinoza was going in a different direction with Batista but acknowledged, the majority acknowledged, that it did not overrule Batista. And so it couldn't have been such a C change. In the idea that you're reaffirming a case that specifically dealt with the federal obstruction – a federal accessory statute and reaffirming why accessory as opposed to misprision is an obstruction of justice aggravated felony, it's hard to imagine how you could see that as a change from the position in terms of accessory when you're reaffirming a prior decision that specifically held accessory. I understand your answer. So – But I think there's a – just on a more fundamental level, if we think that the – if the three-judge panel decision is inconsistent with the en banc decision, what should we do? Well, Your Honor, then you would – if you think – first of all, the question is whether it's a reasonable – and reasonable goes – No, no, I'm just saying, just any case. If we think – we're not talking about this case, because I know you don't think it's a sea change, but if we think that this decision of a three-judge panel is inconsistent with an en banc decision of the board, what should we do? Well, the board would need to decide if – So in other words, you think in that event we would want to remand and say, look, we think this is inconsistent, we have other concerns. What would the board do? I mean, it's not necessarily compelled to go en banc, is it? Well, Your – and that would be up for the board to – just like this court, the board decides when it wants to go en banc, and so if that's what – if the board understood the directive as it needs an en banc decision to do what it did in terms of how this court views its decision, that would be something that the board would take into account to make that appropriate change. See, the situation here is that the board – this court has not previously told the board that this was wrong. This court understood the board's definition, as I mentioned, differently than what it intended, and so the board has never had feedback from this court in terms of anything that it might find problematic or anything about this court's, you know, take on the definition or what the board did. And so the board would have to be able to process that, would have to know, because what the board did here was respond to what it saw as – We understand that. Yes, we do. So it's a – you know, the board would decide that. Interestingly, the same board member authored both Espinoza and the Valenzuela decision, which is – and is, I think, indicative of the fact that that board member understood a clarification of his own prior opinion. I think it's even that much more persuasive that that same person was not changing what he had previously written. And so because, you know, for a lot of these reasons in terms of the clarification, it just – it is not actually going against Espinoza. It's just emphasizing – it talks about the critical element in Espinoza as being the specific intent. And the problem, I think, that arose in Espinoza is that a lot of the decision had to be made in the context of the offense being raised, which was misprision. And so the way that the board had to go about its decision was a little bit wordy, a little bit off, but it was because, I think, the nature of the offense that was being presented to it warranted a different kind of response in terms of why we can't connect misprision to an obstruction offense and why, no matter how much you stretch it, we're going to draw the line there. And it is the example of where the board has drawn the line. And so the board's decision is a reflection of how it needed to respond to that particular offense. And so it's important to keep that in mind. It isn't easy to come up with a definition. The board has recognized that. Like CIMT, it is – offense relating to obstruction of justice gives the board a lot of leeway in terms of how it's going to fashion its definition because the renewal – to attorneys and to people who are here that legally, but can be deported, especially they – categorizing them as an aggravated felon is pretty serious. So here we have this case, and it's not hypothetical. You have someone who is convicted of this crime when the underlying offense was never charged, never prosecuted. Don't you think that's a little overly broad? Your Honor, we're not – I don't know if as an attorney, just to – if her client came to me as an attorney and said, is this going to have immigration consequences, I mean, until the board had acted recently, I would say no. Well, you would know that a conviction for an accessory statute based on Batista would have immigration consequences, and the Supreme Court in other cases – But accessory to what? The other person wasn't ever charged. I'm sorry, what? Accessory to what? He wasn't ever charged. He was convicted. So why would an attorney know to give notice to the client that this could have very serious immigration consequences when the underlying – you know, the person hiding in the house was never charged? Well, you know what you're pleading to. If you're pleading to accessory to a felony and you're pleading and going to end up with a conviction under CPC 32, you know what the consequences are. No, not until this case. Because the board has just said it's categorically. Now, now, of course, attorneys would, but prior to these cases, it would not have. Well, under Batista, it would have fallen under the same reasoning that it didn't go about – I mean, what Batista said was under the federal statute, which is virtually indistinguishable from CPC 32. You would have known that a statute virtually indistinguishable would have had the same immigration consequence. And so it's – Well, that wasn't apparent to the immigration judges in some of these cases because they applied the modified categorical approach. That was based on their own, also, misunderstanding of Espinoza. Well, here we are. I mean, if immigration judges misunderstand Espinoza, how do you expect the attorneys to – This gets back to – I look at the residual clause of the Armed Criminal Act or the career offender provision. It's vague. It's hard to apply. But the Supreme Court says it's constitutional. Justice Scalia disagrees with that. I struggle with it all the time. And similar arguments are made. But let me ask you. Rentore Morales seems to me not to be inconsistent with Batista. In other words, I don't see anything in there that ties it to a pending proceeding. It talks about an active interference with proceedings of a tribunal or investigation and specific intent to interfere with the process of justice. That's what's so interesting is that Salazar and Rentorea – Two weeks apart. Two weeks – yes. As I pointed out in a footnote, I believe, in my brief, that that alone tells you that there couldn't have been such a reliance one way or the other because you have the same case as being understood by one court in two different ways. And that was not enough time if you – you know, you couldn't have possibly relied on Salazar without – Rentorea was also there. It was there two weeks prior. So that's a very good point, I think, in terms of what kind of reliance interest could you have possibly had under those circumstances, especially knowing that in Espinoza, the Board took care in great pains to still continue to reaffirm its position. I understand an immigration judge and this Court understood it differently, but the Board did say what it said about reaffirming Batista. And it did say what it said about accessory after the fact being distinguishable from misprision on the specific intent issue, which it found to be the critical element. So, you know, yes, there could have been, as this Court found, a misunderstanding from that, but you can't have had – relied on some concrete understanding that Batista had been overruled and accessory was not – it just wasn't in the Board's decision that way. And in terms of whether or not someone was actually prosecuted or convicted of the underlying offense, I just want to go back to that. I mean, that would be a possible challenge or collateral attack to whether you were accessory to a felony. If there was no felony committed or for, you know, whatever, in terms of being an accessory to a felony, if it turns out that felony was not committed, you weren't an accessory to a felony necessarily. The real-world situation is that plea bargains are entered into often on accessory because of some other considerations, and part of the considerations would be immigration consequences. So, I mean, that's the real world. Well, it goes back to what you were saying, you know, how important is it that the underlying offense was what it was. And our position continues to be that, you know, the accessory as distinguishable from aiding and abetting is its own offense. And so if you take a step back and realize, I think what the board was trying to do was not attach it to what the underlying offense was because obstruction of justice is its own crime. And accessory, from a very common-sense perspective, is almost the definition of obstruction of justice. I mean, that's how it's sort of defined in treatises, and I think I pointed out in the brief in this case, that it's just sort of a common-sense understanding of, that is what the person did wrong. It's not that the person did the underlying crime or didn't do the underlying crime or what their level of involvement was in the underlying crime. It has nothing to do with it. And the level of the law. So are we now back to any underlying crime would qualify? Well, what I'm saying is that the board saw obstruction as a separate, when it's defining what it means to be obstruction of justice, it isn't taking into account what the principal did. It's taking into account what the person who obstructed justice did.  So we're back to that person. It doesn't need to have known what the underlying crime was or wasn't or how many times it had been committed or anything else. Is that right? Or in this case, a non-crime. Or that it had been committed in this case. Well, they have to know a crime had been committed. A crime. Right. And in terms of her hypothetical examples, they don't have the requisite intent at all. I listed a whole bunch of statutes that would cover the same types of offenses under the Arizona statutory system, which would cover such things as failing to stop and being asked to pull over. No specific intent is given. What's your specific intent in those crimes? And is it a crime that you would actually be convicted for? Not just a trafficking offense. Not a constitutional right that you would invoke here, that you would be convicted for invoking your constitutional right. You have to show examples of a specific intent. And so just listing prank 9-1-1 calls, what was the person's intent in calling 9-1-1? But that's not what opposing counsel listed. What she's listing here is that the underlying individual wasn't charged. Oh, no. That was something different. Right. She was giving hypothetical. But that's her client. That's her client. Right. It's not hypothetical. No. I meant her other hypothetical situations in terms of. She wants to talk about her client. Her client. Right. And so what she seems to be doing is attacking the underlying conviction, because you have to be accessory to a felon to be convicted under CPC-32. So if there was an argument. One of the arguments is this isn't a categorical crime. You have to adopt a modified categorical approach because it encompasses conduct that doesn't fit the Federal definition. Your Honor, we would disagree that it does encompass conduct that wouldn't fit the definition because you look at the terms of CPC-32 on its elements, not what the underlying facts are. The categorical approach specifically forbids looking at underlying facts. I agree. No, that's what we're debating. Right. Right. And so if you're going to challenge, if you think that there was not a proper conviction under CPC-32 because there was no actual felony that took place, I mean, you don't know why the felony. You don't know. Like you said, you don't know why that didn't happen. That's something to be established at the criminal court level. And in terms of a Fourth Amendment violation or anything like that, all has to do with the underlying criminal proceedings. And as much as my opposing counsel would like to try to have this Court find that he was found removable for exercising his Fourth Amendment, right, that's just not the facts. He was non-removable for CPC-32. Right. But the question then for us is whether CPC-32 is categorically a crime or not categorically a crime because it encompasses conduct that would exceed the Federal definition. That's our job. Well, I think that what we need to give your opponent a chance to reflect. Okay. Thank you, Your Honor. Thank you. Just a brief clarification. We're actually not under CPC-32. We're under the separate Arizona statute.  And I understand. She's got three. It's not bad. I completely understand. But I just want to go to the question of that because, actually, Arizona, there is not necessarily a requirement on the language of the statute that the person ultimately be charged or convicted. And that's why this particular statute, in fact, is very overbroad. Now, I want to just briefly again address, Judge Seabright, your point about 1503, how it is very vague. You're correct. It is very vague on its face. But the Supreme Court in Aguilar specifically said we're not going to interpret it that broadly and that vaguely. They said it has to be linked to a judicial proceeding. And what we're saying here is that there's been a very clear definition that has been set forth by Federal case law, by Espinoza-Gonzalez, by the sentencing guidelines, and by the statute itself, that these things need to relate to judicial proceedings. All we're asking the Court to do is to follow that very well-established definition rather than the definition that is an outlier, frankly, in Valenzuela. Now, I think the Court asked what should we do. If you agree with us, do we remand? What do we do? Our suggestion is to do exactly what the Court did in Juan, which is the Court said we're going to look at Batista. We don't think it deserves deference, but we are going to give deference to Espinoza-Gonzalez. The Court can do the exact same thing here. It can say we think that Valenzuela is just too far afield, but we think that Espinoza-Gonzalez puts forth the definition that is very consistent with Federal law, sentencing guidelines, the statute, and defer to that. That's perfectly reasonable for the Court to do. In Robles-Urreas, for instance, the Court did exactly that. After finding that the statute that the BIA's decision, published decision, did not deserve Chevron deference under Step 2, they didn't give them another bite of the apple. Now, if the BIA wants to have another case in the future, another case under one of these statutes, they can take another stab at it, and they can say, all right, well, we're going to maybe give it another shot in this new case that comes up, but this Court has no responsibility whatsoever to remand to give the BIA another shot here. Unless the Court has any further questions, I'll rest my mind. Roberts. Thank you, Your Honor. The case, as heard, will be submitted for decision.
judges: Seabright, Thomas, Christen